**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BOBBIE R. ANDERSON,

      Plaintiff-Appellant,

v.

COORS BREWING COMPANY,

      Defendant-Appellee.

No. 98-1261

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 97-CV-1857-N)**

Mark A. Neider (John M. Connell with him on the briefs), of The Connell Law Firm, Denver, Colorado, for Plaintiff-Appellant.

K. Preston Oade, Jr. (Katherine J. Peck and Kelly M. Condon on the brief), of Holme, Roberts, & Owen, Denver, Colorado, for Defendant-Appellee.

Before **BALDOCK**, **KELLY**, and **MURPHY**, Circuit Judges.

**BALDOCK**, Circuit Judge.

      Plaintiff Bobbie R. Anderson appeals the district court's order granting summary judgment to Defendant Coors Brewing Company. Plaintiff's complaint alleged that Defendant terminated her because of her disability in violation of the Americans With

Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. Plaintiff also alleged that she was discharged in retaliation for filing a claim with the Equal Employment Opportunity Commission (EEOC). Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

Plaintiff suffers from multiple sclerosis (MS), a chronic nerve disorder for which no cure exists. As a result, Plaintiff suffers from numbness, pain, fatigue, cramps, blurred vision, fainting spells, forgetfulness, loss of balance and incontinence. Plaintiff's condition limits, among other things, her ability to lift heavy objects, work in a hot environment and stand for long periods of time.

On May 20, 1996, Defendant hired Plaintiff as a Temporary Production Operator (TPO). TPO positions may last no longer than 1,480 hours and persons filling the positions do not receive medical or dental benefits, life insurance or paid vacation time. TPOs are expected to work at a variety of locations throughout Defendant's brewery on an "as needed" basis. Although TPOs are not required to perform every job in the brewery without assistance, a TPO must be able to perform a wide variety of functions in a wide variety of conditions. For example, TPOs may be required to lift heavy objects, climb ladders, walk on suspended walkways, inspect cans, stack pallets, clear jams in the production line, and operate machinery in environments described as hot, cold, moist, damp, noisy and dusty.

While working for Defendant, Plaintiff worked above "the ovens" retrieving cans

2

thrown from the conveyor system, on the loading docks making cardboard boxes, filling boxes with defective cans, retrieving empty pallets, placing boxes of cans on the pallets, taping the boxes, and labeling pallets. Plaintiff also worked as a can sorter. On June 28, 1996, Plaintiff missed work for what she described as flu-like symptoms. She returned the next working day. On July 2, 1996, Plaintiff's husband informed Defendant that Plaintiff was having work-related difficulties. Defendant's representantives met with Plaintiff to discuss her problems. She informed them that she suffered from MS and was being pushed too hard. Defendant referred Plaintiff to its medical center for evaluation and informed her that it would attempt to accommodate any work restrictions. The medical center sent Plaintiff to her own physician.

Plaintiff's physician, Dr. Henbest, placed her under several preliminary work restrictions which she reported to Defendant. Initially, Dr. Henbest suggested that Plaintiff be allowed to work in a cool environment; preferably less than eighty degrees Fahrenheit. Later, he opined that Plaintiff could not:

    a.    operate man lifts, forklifts, motor vehicles, or high-speed or dangerous machinery.
    b.    walk or stand more than twenty minutes per hour.
    c.    stoop, bend or twist more than ten times per hour.
    d.    lift over twenty pounds to a height of thirty inches more than ten times per hour.
    e.    push or pull over twenty pounds more than ten times per hour.
    f.    climb ladders, racks, etc.
    g.    work at unprotected heights over six feet.
    h.    work more than eight hours per day.

Plaintiff requested that Defendant accommodate her disability by allowing her to sit on a

stool while she sorted cans, wear a camel back water bottle to control her internal heat, place a fan or other cooling device near her to control her external heat and to supply her with a safety harness when necessary. Defendant examined Plaintiff's work restrictions and her requests for accommodation and determined that she could not perform the functions required to work as a TPO. Therefore, on October 4, 1996, Defendant terminated her employment.

Plaintiff filed suit in the district court alleging that Defendant violated the ADA by terminating her because she suffered from MS. Plaintiff also alleged that Defendant terminated her because she filed a complaint with the EEOC. Defendant filed a motion for summary judgment arguing that: (1) Plaintiff was not disabled; (2) Plaintiff was not qualified for the position even with reasonable accommodation; and (3) Plaintiff failed to establish that Defendant's proffered reason for terminating her was pretextual. The district court determined that Plaintiff was not qualified for the position and that she failed to demonstrate that Defendant's reason for firing her was pretextual. Accordingly, the court granted Defendant's motion for summary judgment. The instant appeal ensued.

II.

A.

Plaintiff contends that the district court erred in granting Defendant's motion for summary judgment. We review the district court's grant of summary judgment de novo. Marx v. Schnuck Markets, Inc., 76 F.3d 324, 327 (10th Cir. 1996). Applying this

4

standard, we examine the factual record and reasonable inferences drawn therefrom in a light most favorable to the nonmoving party. Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998). We will uphold the decision only if no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. Marx, 76 F.3d at 327. A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. Id. Instead, the nonmoving party must present facts such that a reasonable jury could find in its favor. Id.

In order to sustain a claim under the ADA, Plaintiff must establish that:

1.  she is a disabled person within the meaning of the ADA;
2.  she is qualified, i.e., she can, with or without reasonable accomodation perform the essential functions of her job; and
3.  the employer terminated her because of her disability.

White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1998). The parties do not dispute on appeal that Plaintiff has provided evidence that she is disabled within the meaning of the ADA. Accordingly, we must determine whether she is "qualified" under the ADA.

We have adopted a two-part test for determining whether a person is qualified under the ADA. Milton v. Scrivener, 53 F.3d 1118, 1123 (10th Cir. 1995). First, we examine whether the individual can perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Id. Second, if we conclude that the individual is not able to perform the essential functions of the job at issue, we must determine whether any reasonable accommodation by the employer would

5

enable her to perform those functions.  Id.

In determining whether Plaintiff was qualified, the district court looked at the essential functions which must be performed by a TPO.  Examining those functions, the district court concluded that Plaintiff was not qualified for the job.  Plaintiff argues that the district court erred by defining the essential functions of her employ as those of a TPO.  Plaintiff contends that she was hired as a can sorter, not a TPO.  Thus, she argues, the district court should have limited its inquiry to the essential functions of a can sorter.  We disagree.

The record clearly shows that Defendant hired Plaintiff as a TPO and assigned her to a can sorting line.  She admitted as much in both her opening brief and her response to Defendant's motion for summary judgment.  Plaintiff's argument is nothing more than an attempt to twist from the appellate record an issue of fact where none exists.

We also reject Plaintiff's argument that the district court should have considered only the essential functions of a can sorter position because she spent most of her time in that position.  Plaintiff worked for Defendant for sixteen days.  Although she spent the majority of her time on the can-sorting line, she worked in five different areas and performed a variety of tasks.  Defendant requires TPOs to perform numerous tasks on an as needed basis for a period of approximately 185 days.  The fact that Defendant spent the majority of her sixteen days on the can sorting line does not mean that Defendant narrowed her job description from TPO to can sorter.  The district court properly

considered the essential functions of a TPO in determining whether Plaintiff was qualified.

Plaintiff further contends that the district court's failure to limit its determination of essential functions to those of a can sorter effectively undermines the protections afforded by the ADA. The crux of this argument appears to be that the TPO position is so demanding that nobody can perform all of the functions of the job. Thus, Plaintiff contends that an employer may undermine the ADA by hiring people as a TPO and, upon learning that they are disabled, fire them under the guise that they are not able to perform the essential functions of the job. We disagree.

It is not the province of the court to undermine the legitimate operation of a production facility. Milton, 53 F.3d at 1124. In many situations, an employer may create a position, the nature of which, requires an employee to perform a multitude of tasks in a wide range of environments. The Seventh Circuit recently examined such a position. In Miller v. Illinois Dept. of Corrections, 107 F.3d 483, 485 (7th Cir. 1997), a corrections officer was involved in a serious car accident. As a result, she suffered severe vision impairment which required the use of a seeing-eye dog. Because of her problem, the Department of Corrections (DOC) terminated her because she could not perform the essential functions of her job.

The DOC described the essential functions of the job as standing guard, counting inmates, inspecting for contraband, escorting inmates outside their cells, searching

7

inmates and visitors, searching for escaped prisoners, being on 24-hour call to respond to emergencies, operating a switchboard and issuing guns to correctional officers. The plaintiff filed suit alleging violation of the ADA. She argued that she was a qualified individual because she could operate the switchboard and issue guns to officers. Rejecting her argument, the Seventh Circuit explained:

> It seems to us . . . that if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless [s]he can perform enough of these duties to enable a judgment that [s]he can perform its essential duties . . . If it is reasonable for a farmer to require each of his farmhands to be able to drive a tractor, clean out the stables, bale the hay, and watch the sheep, a farmhand incapable of performing any of these tasks except the lightest one (watching the sheep) is not able to perform the essential functions of the position . . . . In the case of correctional officers . . . the reason for having multiply able workers who rotate through the different duty positions is to be able to respond to unexpected surges in the demand for particular abilities. The prison has to be able to call upon its full staff of correctional officers for help in putting down a prison riot, and therefore each officer must have experience in the positions . . . as well as the capability [to respond]. It would not do to have a correctional officer whose only experience and capability were in operating a telephone switchboard or issuing weapons.

Id.

The record clearly demonstrates that the TPO position is a multiple duty job classification which serves a legitimate business purpose. Defendant runs a large operation which brews, packages and ships its product. The TPO position allows Defendant to rotate workers on an as needed basis to different parts of its operation in response to "surges in the demand for particular abilities." See id. It is employer's

8

province to define the job and the functions required to perform it.  Milton, 53 F.3d at 1124.  The record contains no evidence suggesting that the TPO position does not serve a legitimate business purpose.  Accordingly, we will not secondguess the employer's judgment.

B.

Citing no relevant authority, Plaintiff next argues that the district court erroneously determined that no issue of fact exists as to whether she could perform the essential functions of her job with reasonable accommodation.  Although unclear, this argument appears to restate, at least in part, her argument that the essential functions of her job are those of a can sorter, not a TPO.  We have rejected this argument and need not repeat ourselves here.  Suffice to say, the essential functions of her job are clearly those of a TPO and not a can sorter.

Plaintiff's brief could also be construed as arguing that the district court failed to recognize a genuine issue of fact as to whether modification of her work assignment was a reasonable accomodation.[1]  Thus, we must examine the accommodation she contends is reasonable.  Plaintiff suggests that Defendant could reasonably accommodate her by placing her on the can-sorting line, providing localized air-conditioning and allowing her

---

[1]  We note that while Defendant argues a reasonable accommodation in this case would be to limit the assignments she could receive as a TPO, she does not argue that Defendant was required to reassign her to another position within the company.  See Smith v. Midland Brake, Inc., __ F.3d __, 1999 WL 387498 (10th Cir. 1999) (en banc).

to sit on a stool while wearing a camelback water pack.

Plaintiff's requested accommodation is unreasonable. Plaintiff's request would transform the TPO position from one which requires an employee to perform multiple tasks ranging from visual inspection of cans, to heavy lifting, to climbing ladders, to operating machinery, to one which requires an employee to sit in one place and perform one task. Such a request fundamentally alters the nature of the position. Defendant is under no obligation to change the structure of its business or create a new position for Plaintiff. Milton, 53 F.3d at 1124-25. Nor is Defendant required to make its other TPOs perform all of the operation's demanding tasks while Plaintiff performs only certain light tasks. Id. Because Plaintiff requests accommodations which Defendant is not legally obligated to make, we reject this argument as well.

For the foregoing reasons, we conclude Plaintiff failed to show that she could perform the essential functions of a TPO position with or without reasonable accommodation. Accordingly, the district court properly concluded that Plaintiff failed to establish a prima facie case of discrimination under the ADA.

C.

We turn next to Plaintiff's retaliation claim. The analytical framework pronounced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), guides our review of this claim. Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). Under that framework, Plaintiff must establish a prima facie case of retaliation. Id. Once the

10

Plaintiff establishes a prima facie case, the burden shifts to Defendant to come forward with a non-discriminatory reason for its employment decision. Id. If the employer presents a non-discriminatory reason for its decision, the burden shifts back to the Plaintiff to show that "there is a genuine issue of material fact as to whether the employer's proferred reason for the challenged action is pretextual, i.e., unworthy of belief." Id.

In considering Plaintiff's retaliation claim, the district court determined that Plaintiff made a prima facie case based on the temporal proximity of her termination to her EEOC and ADA complaints. In response to the prima facie showing, Defendant presented evidence showing that it terminated Plaintiff because she was not qualified for her position. The district court found that Plaintiff failed to show that Defendant's proffered reason for terminating her was pretexual. Thus, the district court granted Defendant's motion for summary judgment.

Defendant urges us to uphold the grant of summary judgment on the grounds that, contrary to the district court's finding, Plaintiff failed to prove a prima facie case of retaliation. In order to establish a prima facie case, Plaintiff must show:

> 1) she engaged in a protected activity;
> 2) she was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and
> 3) a causal connection between the protected activity and the adverse employment action.

Morgan, 108 F.3d at 1324. By filing an EEOC claim, Plaintiff engaged in protected

11

activity. McCue v. State of Kansas, 165 F.3d 784, 789 (10th Cir. 1999). Thus, we must determine whether she was subjected to adverse employment action.

This circuit liberally defines the phrase "adverse employment action." Jeffries v. Kansas, 147 F.3d 1220, 1232 (10th Cir. 1998). We have not, however, defined a set rule regarding what constitutes an "adverse employment action." Id. Instead, we take a case-by-case approach in determining whether a given employment action is "adverse." Id. We do so recognizing that the ADA, like Title VII, is neither a "general civility code" nor a statute making actionable the "ordinary tribulations of the workplace." Gunnell v. Utah Valley State College, 152 F.3d 1253, 1265 (10th Cir. 1998).

Plaintiff presents two items of evidence which she claims are "adverse employment actions." First, she claims Defendant's act in terminating her is an adverse employment action. Second, she claims she suffered "adverse employment action" when someone placed "harassing" phone calls to her home from one of Defendant's phone lines.

We conclude that Plaintiff suffered adverse employment action when Defendant terminated her. See Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1104 (10th Cir. 1998). The phone calls, however, do not constitute adverse employment action. The phone calls, placed from one of Defendant's phone lines, consisted of background music with occasional laughter. The caller[s] did not mention Plaintiff's EEOC claim, made no threats, and gave no indication of their identity. Plaintiff presents no evidence that the

12

calls were placed by any of Defendant's employees with decision-making capacity or that management condoned the activity. While the calls were no doubt annoying, they do not amount to adverse employment action.

Having concluded that the only adverse employment action suffered by Plaintiff was her termination, we must now determine whether termination, standing alone, is sufficient to establish causation. The date of Plaintiff's termination is key to this inquiry because the closer it occurred to the protected activity, the more likely it will support a showing of causation. Compare Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 596 (10th Cir. 1991) (one and one-half month period between protected activity and adverse action may, by itself, establish causation) with Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period, standing alone, is insufficient to establish causation). Some confusion exists as to when Plaintiff was terminated. Defendant contends that it terminated Plaintiff on October 4, 1996. Plaintiff filed an EEOC complaint on July 28, 1996, alleging that she was terminated on July 8, 1996. In her briefs, Plaintiff contends that she was not terminated until after August 27, 1997. In determining whether a causal nexus exists, we will accept the date most favorable to her, October 4, 1996.[2] Byers, 150 F.3d at 1274.

---

[2]Assuming she was terminated on July 8, 1996, Plaintiff cannot make a prima facie showing of retaliation. Plaintiff did not file a charge with the EEOC until July 25, 1996. Keeping in mind that Plaintiff contends she was fired for filing this charge, there can be no retaliation under this scenario because the charge was filed after her termination. See Gunnell, 152 F.3d at 1262 (employee must be subjected to adverse employment action

Accepting the October 4, 1996 date as true, Defendant terminated Plaintiff approximately two months and one week after she filed her EEOC claim. A retaliatory motive may be inferred when an adverse action closely follows protected activity. Chavez v. City of Arvada, 88 F.3d 861, 866 (10th Cir. 1996). However, unless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation. Connor v. Schnuck Markets, Inc., 121 F.3d 205, 209 (10th Cir. 1997) (emphasis added). For example, we have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. Ramirez, 41 F.3d at 596. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation. Richmond, 120 F.3d at 209. Thus, we find ourselves three weeks short of three months and three weeks past one and one-half months. We need not decide on which side the line should be drawn, however, because assuming two months and one week is sufficient to support a prima facie case of retaliation, Plaintiff cannot prove that Defendant's proffered reason for terminating her was pretextual.

A plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory

subsequent to or contemporaneous with the protected activity).

reasons." Morgan, 108 F.3d at 1323. Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. Id.

The district court found that Plaintiff established a prima facie case of retaliation. The burden then shifted to Defendant who asserted that it terminated Plaintiff because she was not qualified to perform her job with or without reasonable accomodation. The district court concluded that Plaintiff failed to show pretext and granted summary judgment in Defendant's favor.

Plaintiff contends that the district court erroneously concluded that she did not present evidence showing Defendant's argument was pretextual. First, she argues that a genuine issue of material fact existed as to whether she was qualified for the position, thus, a fact issue exists as to whether Defendant's proferred reasoning for terminating her was pretextual. Second, she argues that she rebutted Defendant's reason for terminating her by presenting evidence that she received harassing phone calls from Defendant's place of business before she was terminated.

We do not agree with either argument. As previously discussed, the record clearly shows that Plaintiff cannot perform the essential functions of her job and is, therefore, not qualified. Similarly, the "harassing" phone calls are so innocuous in nature that they cannot undermine Defendant's proffered reason for terminating her. Thus, Plaintiff is left with the temporal proximity between filing her EEOC complaint and termination.

Assuming the time between Plaintiff's termination and filing her EEOC claim is

sufficient to survive summary judgment in regard to establishing a prima facie case, it cannot overcome Defendant's proffered reason for terminating her. The evidence overwhelmingly supports Defendant's proffered reason and Plaintiff presents nothing which would cause a reasonable finder of fact to determine that the reason is unworthy of belief. See Grady v. Shawnee Public School District I-93, 1998 WL 852533 at *6 (10th Cir. 1998) (unpublished); Jackson v. Delta Special School Dist. No. 2, 86 F.3d 1489, 1494-95 (8th Cir. 1996). Therefore, Plaintiff cannot show pretext. The district court properly granted summary judgment on this claim.

AFFIRMED.