**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

LYLE R. NELSON,

      Plaintiff-Appellant,

v.

ITT HARTFORD FIRE INSURANCE
CO.,

      Defendant-Appellee.

No. 99-6275
(D.C. No. CIV-98-638-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **McKAY** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Lyle R. Nelson, bankruptcy trustee for the estate of National Guaranty Title Company (NGTC), appeals from summary judgment granted in favor of ITT Hartford Insurance Company (ITT).    The sole legal issue is whether the estate is entitled to recover under a fidelity insurance policy for acts of employee dishonesty that have not yet resulted in actual loss to the estate, but for which the estate is potentially liable   .  Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse.

## Background

The relevant facts are not disputed.  NGTC conducted real estate closings and held monies for its clients in escrow accounts.  For two years before its financial demise, certain employees of NGTC misappropriated funds from the escrow accounts, failed to properly pay out proceeds of loan closings, and fraudulently collected funds to be used for title insurance premiums while knowing that NGTC was no longer authorized by any insurer to issue title insurance policies.  After NGTC filed for bankruptcy, former clients and intended beneficiaries of the escrow monies, the defrauded title insurance company, and others rendering services for NGTC filed claims against the estate totaling over $250,000.

NGTC purchased employee "crime coverage" insurance from ITT. Pursuant to that policy, ITT contracted to pay "compensatory damages arising directly from a loss covered under this insurance," and defined "[i]nterests [c]overed" as property "[t]hat you own or hold"; or "[f]or which you are legally liable." Appellant's App. at 52, 53. The Trustee filed an adversary complaint against ITT on behalf of NGTC, seeking to recover the escrow losses under these provisions of its insurance policy in order to satisfy the claims against the estate.

The matter was withdrawn from reference to the bankruptcy court. The district court granted summary judgment in favor of ITT, finding that it was bound by our decision in *Spears v. St. Paul Ins. Co. (In re Ben Kennedy & Assocs. , Inc.)* , 40 F.3d 318 (10th Cir. 1994). The district court held that, under *Ben Kennedy* , because NGTC had not yet paid back the escrow losses to its clients, the estate had no insurable interest and therefore could not recover under the policy. We review this legal conclusion on summary judgment *de novo.* *See Anderson v. Coors Brewing Co.* , 181 F.3d 1171, 1175 (10th Cir. 1999).

## Discussion

1. Application of *Ben Kennedy* . In *Ben Kennedy* , a company's dishonest employee defrauded its customers of more than $235,000 before his scheme was discovered. *See* 40 F.3d at 319. Before filing for bankruptcy, the company spent $20,737.52 refunding certain premiums and replacing a few fictitious insurance

policies promised by the employee.  *See id.*  The company then filed bankruptcy and did not repay any other customer losses.  These defrauded customers failed to timely file claims against the estate with the bankruptcy court, thus, in contrast to the case before us, the estate could never be held liable to pay additional claims arising from its employee's fraudulent acts and its actual losses would be limited to the amounts it had paid out pre-bankruptcy.

The employee dishonesty coverage provision stated that it would protect against losses of money "whether or not [the company] was liable for its loss." *Id.*  The *Ben Kennedy* trustee argued that, pursuant to this language, the estate was entitled to recover the full policy limits of $100,000 even though there was no possibility that the estate could ever suffer losses greater than the $20,737.52 it had paid out prior to bankruptcy.  Looking to Oklahoma law, we held that the trustee was entitled to recover only those losses incurred from reimbursing defrauded customers prior to the bankruptcy because the company's "insurable interest in the loss of its clients' money while in its possession could only extend as far as the financial detriment it *would* suffer as a result of that loss." *Id.* (emphasis added).  We refused to enforce the express promise to protect against losses regardless of liability for the loss because Oklahoma courts "would then consider it a[n unenforceable] wagering contract." *Id.*

As the district court noted, several facts in *Ben Kennedy* are similar to the case at bar. The case is distinguishable, however, in two key respects: the policy language and the potential liability of the estate for lost escrow funds. The district court rejected the Trustee's argument that *Ben Kennedy* is not controlling because of these different facts. The court noted that, even though the bankruptcy estate in *Ben Kennedy* would not be liable for further claims, because we did not expressly state that this fact was a basis for our decision, the court would not assume that it mattered. *See* Appellant's App. at 36 n.3. This conclusion is erroneous.

We refused to enforce the language promising to pay for lost escrow monies notwithstanding liability for that loss in *Ben Kennedy* only because allowing the insured to recover such money when it had no obligation to pay it back to its owners "would amount to allowing an insured to wager on the loss of others' property in its possession, and might foster a temptation for similarly situated insureds to 'lose' such property for economic gain." 40 F.3d at 319-20. Because the Trustee in this case is requesting recovery under the policy only for those losses that it is liable for (as may be established in the adversarial proceedings), and because the policy provides coverage for only those losses for which NGTC is legally liable, there is no danger of NGTC receiving the windfall proscribed by our opinion in *Ben Kennedy*. The Trustee is therefore entitled to

recover losses when and if NGTC's liability for those losses is established

(subject, of course, to any other applicable exclusions).[1]

2. Accrual of ITT's liability under the policy. ITT argues that it is not required to pay for losses until judgment on each claim is entered against NGTC and the estate has actually paid the judgments because the policy is for first-party, and not third-party, coverage. We disagree. That the policy is for first-party coverage has no bearing on the accrual of ITT's liability. As the district court pointed out, "nothing in the opinion in *Kennedy* indicates any requirement that the insured first pay on a claim before coverage is required." Appellant's App. at 25. Under the policy language in this case, NGTC did not have to actually pay back the losses from the escrow funds before ITT became liable for those losses. It is, therefore, an indemnity policy from liability and not solely an indemnity

---

[1]     The policy apparently excluded from coverage losses caused by dishonest acts by NGTC's owners. The district court declined to entertain the issue whether the Trustee had evidence that other employees of NGTC engaged in dishonest acts because of its holding that the Trustee could not recover under the policy because it had no evidence of actual losses (having not repaid lost escrow monies to defrauded clients for lack of financial resources to do so). *See* Appellant's App. at 22. On remand, the district court will, of course, entertain all other issues not addressed on summary judgment.

policy from loss. [2] ITT is liable to pay those claims for losses against NGTC as they are established by the defrauded client/creditors of the estate.

The Trustee's motion to certify questions of state law is **DENIED**. The judgment of the United States District Court for the Western District of Oklahoma is **REVERSED** and the case remanded for further proceedings.

Entered for the Court

Robert H. Henry
Circuit Judge

---

[2]    The issue of accrual of liability--i.e., at what point ITT becomes liable to pay for NGTC's losses -- is controlled by the intent of the parties as expressed by the language of the policy. *See* Okla. Stat. tit. 15, § 427(1), (2). "(1) Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable. (2) Upon an indemnity against claims or demands, or damages or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof." *Id.; see also Travelers Ins. Co. v. L.V. French Truck Serv., Inc.*, 770 P.2d 551, 555 (Okla. 1988) ("An action to enforce indemnity from liability accrues when the event for which indemnity is due occurs, while a cause of action for indemnity from loss does not arise until the loss is paid.") As noted above, the policy expressly provides that ITT will pay for losses "for which you are legally liable" and requires NGTC to transfer to ITT "all your rights of recovery against any person or organization for any loss you sustained." Appellant's App. at 53, 54. This language establishes that it is a policy for indemnity from liability and ITT points to no evidence that indicates otherwise. ITT's argument that all fidelity insurance policies are for indemnity only from loss because the "banker's and broker's blanket bonds" at issue in *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 595 N.Y.S.2d 999, 1004 (N.Y. Sup. Ct. 1993), were determined not to be liability policies, is specious.

-7-