F I L E D
United States Court of Appeals
Tenth Circuit

AUG 30 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HARRY JAMES FREEMAN,

      Plaintiff-Appellant,

v.

SANTA FE RAILWAY,

      Defendant-Appellee.

No. 99-3200
(D.C. No. 97-4042-DES)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **TACHA** , **PORFILIO** , and **EBEL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal arises from plaintiff's suit brought pursuant to Title VII and 42 U.S.C. § 1981, alleging retaliation for filing an employment discrimination charge

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

with the Kansas Human Rights Commission (KHRC). The district court entered summary judgment in favor of defendant on plaintiff's claims, holding that plaintiff had failed to establish a *prima facie* case in any of the three instances of alleged retaliation because he failed to establish a causal connection between his protected activity and the adverse employment action. We review a grant of summary judgment de novo, and we apply the same standard as the district court. *See Robbins v. Jefferson County. Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999). In so doing, we view the record in the light most favorable to plaintiff. *See id.* Guided by these standards, we affirm in part and reverse in part.

## I. Facts

Plaintiff, an African-American, was employed by the Santa Fe Railway and was promoted in 1977 to the exempt (which means non-union and managerial) position of night janitorial supervisor. Beginning in 1986, plaintiff's supervisor was Harold Lutz. In November 1991, Mr. Lutz gave plaintiff an annual performance evaluation and rated plaintiff's overall performance in the lowest category–"performed below expectations." Nevertheless, plaintiff received a salary increase in January 1992. Plaintiff received a 1992 evaluation from

Mr. Lutz dated January 15, 1993, [1] placing his overall performance once again in the lowest category, then labeled "deficient." Again, despite his negative evaluation, plaintiff received a pay increase in January 1993. Despite his request, plaintiff did not receive a copy of the 1992 evaluation at that time.

In response to his 1991 and 1992 negative evaluations, plaintiff wrote two letters to Mr. Lutz in February 1993, disagreeing with the negative evaluations. When he received no response from Mr. Lutz, he wrote a letter to the president of the company, complaining that he had not received a copy of the 1992 deficient evaluation and also complaining of its substance. At the direction of his supervisor, Mr. Lutz responded to plaintiff's letter in August 1993. On October 20, 1993, Mr. Lutz met with plaintiff to discuss the 1992 evaluation. During that meeting Mr. Lutz told plaintiff that he would be receiving another negative evaluation for 1993, which could possibly result in his termination.

Five days later, on October 25, plaintiff filed a charge with the KHRC, alleging that the past negative evaluations and the upcoming negative evaluation, carrying with it the possible consequence of termination, were the result of racial discrimination.

---

[1] To avoid confusion, we will refer to the performance evaluation for 1992, which was dated January 15, 1993, as the 1992 evaluation.

In November 1993, Mr. Lutz completed plaintiff's 1993 evaluation and, just as he had forewarned, plaintiff's overall performance was rated in the lowest category–"performed below expectations." [2] Plaintiff was informed on December 30, 1993, that he would not receive a pay increase in January 1994 because of his negative performance evaluations.

Plaintiff received a more positive evaluation in 1994, and he received a pay raise in January 1995. In September 1995, the Santa Fe Railway merged with the Burlington Northern Railroad. In November, plaintiff's exempt position was abolished. Plaintiff was informed on November 8 that he had been relieved of his duties effective immediately, but that his salary and benefits would continue through the end of the year. On November 14, 1995, while plaintiff was off work, a new position for a night janitorial supervisor was created and posted. The new position was a non-exempt job to be filled by a union employee, but not necessarily on the basis of seniority. Plaintiff did not see the job posting and,

---

[2] Of the nine individual performance factors, however, plaintiff received a "performed below expectations" rating in only two; the other seven categories were rated as either meeting or exceeding expectations. Plaintiff presented evidence that this was contrary to the company's performance appraisal guidelines, which instructed that in evaluating overall performance, the ratings for the performance factors should be considered with equal weight. When questioned on the matter, Mr. Lutz stated that when assigned a rating in the "overall performance evaluation" category, he engaged in a subjective analysis of job performance, rather than an objective weighing of the individual performance factors.

therefore, did not apply. The new position was filled by Mary Ann Garcia on November 21, 1995. Plaintiff returned to the office sometime in late December 1995 to examine job postings, and he exercised his seniority rights to take a day job in the same department, which he began in January 1996.

## II. Discussion

Plaintiff alleges three instances of alleged retaliation by defendant in response to plaintiff's protected activity: (1) failure to give him a pay raise in January 1994; (2) abolishment of his exempt position in November 1995; and (3) failure to offer him the newly created nonexempt position. "The analytical framework pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 . . . (1973), guides our review of [a retaliation] claim." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (further citations omitted). Plaintiff must first establish a *prima facie* case of retaliation and then the burden shifts to defendant to offer a non-discriminatory reason for its employment decision. *See id.* The burden then falls upon plaintiff "to show that there is a genuine issue of material fact as to whether the employer's prof[f]ered reason for the challenged action is pretextual, i.e., unworthy of belief." *Id.* (quotation omitted).

We begin by addressing the requirements for a *prima facie* case. To establish a *prima facie* case of retaliation, plaintiff must establish three things. First, he must show that he engaged in protected opposition to discrimination. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999). Next, plaintiff must establish that he was subjected to adverse employment action. *See id.* Finally, he must show "a causal connection existed between the protected activity and the adverse employment action." *Id.* A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982); *see also Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1261-62 (10th Cir. 1994). Our review of the record shows that, contrary to the district court's conclusion, plaintiff has established a *prima facie* case of retaliation in connection with the denial of a pay increase in January 1994. With regard to the remaining two instances of alleged retaliation, however, the record shows that the district court was correct in concluding plaintiff failed to establish a *prima facie* case of retaliation.

Plaintiff's first claim is that defendant retaliated against him for engaging in protected activity by denying him a pay raise in January 1994. After noting that defendant concedes that plaintiff has shown the first two elements of a *prima*

*facie* case, the district court held that plaintiff had failed to show the third

element, a causal connection between the protected activity and the adverse

employment action. The district court stated that

> [t]he plaintiff essentially admits that the adverse employment
> decision had been made prior to the filing of the discrimination
> charges with the KHRC. In fact, the plaintiff filed his charges with
> the KHRC, at least in part, in response to learning about the
> upcoming adverse employment action. The court fails to see how
> any reasonable juror could determine that the adverse employment
> action taken by the defendant could have been in retaliation for the
> filing of the KHRC charges. The plaintiff acknowledges that the
> decision had been made and conveyed to him before the charges were
> filed. In fact, the evidence shows that the plaintiff may have been
> treated favorably as a result of filing the charges with the KHRC, as
> evidenced by his not being terminated as a result of the poor
> evaluation.
>
> . . . Any inference of causal connection created by the temporal
> proximity of the plaintiff's protected activity and the defendant's
> employment decision is completely negated by the plaintiff's own
> admissions of the timing of these events. The plaintiff has admitted
> that the decision to give him a poor evaluation, which was the direct
> cause of the failure to receive a pay raise, had been made prior to the
> charges being filed.

Appellant's App. 128-29. We respectfully disagree. The record does show that

plaintiff knew, before he engaged in the protected activity of filing a charge with

the KHRC, that he would be receiving his third consecutive negative evaluation

and that it *could* result in his termination. The evidence does not show, however,

that plaintiff knew he would be denied a pay raise in January 1994, or even that

the decision to deny him a pay raise had been made. In fact, based on the fact

-7-

that plaintiff had received pay raises in the previous two years on the heels of negative evaluations, the evidence indicates that plaintiff had every reason to believe he would receive a 1994 pay raise in the wake of the negative 1993 evaluation.

Plaintiff was informed that he would not be receiving a pay raise on December 30, 1993, two months and six days after he filed his charge of discrimination with the KHRC. That temporal proximity, considered in light of the fact that pay raises were given or denied only in January of each year and coupled with the evidence that plaintiff previously received pay raises following negative evaluations, is sufficient to infer a retaliatory motive and establish a causal connection sufficient to support a *prima facie* case of retaliation. [3]

Having decided that plaintiff did, in fact, present evidence sufficient to establish a *prima facie* case, we decline his invitation to analyze whether his

---

[3] We do not decide whether two months and six days is a sufficiently short period of time, standing alone, to establish a causal connection. *See Anderson*, 181 F.3d at 1179 (declining to decide whether two months and one week is sufficient to support a *prima facie* case of retaliation, and noting that we have held one and one-half months a sufficiently short period of time, by itself, to establish causation, and have also held three months, standing alone, too remote to establish causation). Even assuming that two months and six days between the protected activity and the adverse action is too extended a time period to establish causation, there is additional evidence inferring a retaliatory motive and establishing causation. *See id.* ("unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation").

evidence establishes pretext in the face of defendant's non-discriminatory reason for denying him a pay raise in 1994. We recognize that plaintiff presented evidence that may speak to the question of pretext,[4] but we leave it to the district court on remand to evaluate the evidence at the next stage of the burden-shifting analysis.

Plaintiff's remaining two allegations of retaliation involve the abolition of his exempt position following the merger in 1995 and defendant's failure to notify him of and offer him a newly created non-exempt position that was posted during his absence after his position was eliminated. We agree with the district court that plaintiff did not establish a *prima facie* case of retaliation in either instance. The evidence simply does not establish a causal connection between plaintiff's protected activity and the adverse employment actions.

## III. Conclusion

In sum, we AFFIRM the district court's grant of summary judgment on plaintiff's claims that defendant retaliated against him by abolishing his position in 1995 and by not informing him of and offering him a newly-created position

---

[4] Plaintiff presented evidence that he received pay raises in 1991 and 1992 in the wake of negative evaluations, that Mr. Lutz testified to the subjective nature of his rating of plaintiff's overall performance, and that the appraisal guidelines seem to dictate a more objective weighing of the performance factors to arrive at an overall performance evaluation.

that was posted during his absence.  We REVERSE the district court's grant of summary judgment for failure to establish a *prima facie* case on plaintiff's claim that defendant retaliated against him by denying him a pay increase in January 1994, and we REMAND to the district court for proceedings consistent with this order and judgment.

Entered for the Court


John C. Porfilio
Circuit Judge