**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES UNDERWOOD,

      Plaintiff-Appellant

    and

RICHARD PHILLIPS,

      Plaintiff,

v.

THE BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF JEFFERSON, STATE
OF OKLAHOMA; JOHN DALE,
in his individual capacity,

      Defendants-Appellees.

No. 10-6147
(D.C. No. 5:07-CV-00668-D)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY** and **BALDOCK**, Circuit Judges, **BRORBY**, Senior
Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff James Underwood appeals from the district court's entry of summary judgment in favor of defendants on his retaliatory discharge claim. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background[1]

From 1995 through 2006, Defendant John Dale was the elected District 3 County Commissioner in Jefferson County, Oklahoma. He had authority to hire and fire District 3 employees on behalf of the county, which is named as a defendant in this case through its Board of County Commissioners (Board) pursuant to Oklahoma law. In 2001, Mr. Underwood's co-plaintiff, Richard Phillips, began working for Mr. Dale as road foreman. In 2003, on Mr. Phillips's recommendation, Mr. Dale hired Mr. Underwood to work as a member of the road crew. The three have known each other since childhood, and Mr. Phillips is one of Mr. Underwood's closest friends.

In May 2006, Mr. Phillips approached Mr. Dale to say that he intended to run for District 3 Commissioner in that year's election. Mr. Underwood accompanied Mr. Phillips when he made this announcement. According to Mr. Underwood, Mr. Dale said "he was going to run, too," Aplt. App. at 96, and was "visibly upset," "very red faced," and "a little bit loud, more than normal,"

---

[1]    In construing the facts, we view the evidence and all reasonable inferences from it in the light most favorable to Mr. Underwood as the party opposing summary judgment. *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1122 n.1 (10th Cir. 2009).

*id.* at 98-99.  Later that day, Mr. Dale asked Mr. Phillips if he would have a job if Mr. Phillips was elected.  Mr. Phillips told him no.

Ultimately, Mr. Dale decided not to run for reelection, but he did place a sign in his yard in support of the candidate opposing Mr. Phillips. Mr. Underwood campaigned for Mr. Phillips by handing out cards door-to-door and putting up flyers.  Mr. Dale did not criticize Mr. Underwood during this time, and their work relationship remained friendly.

Mr. Phillips lost in an election held on July 25, 2006.  After the election, Mr. Dale continued as Commissioner until the end of 2006, when his term expired.  In late August or early September of 2006, Mr. Dale "accused [Mr. Underwood] of saying he had stolen or embezzled money and stolen gas." *Id.* at 539 (Underwood Depo. at 125:15-17).  Mr. Underwood denied the accusation.  In September and October, Mr. Underwood received two step raises that Mr. Dale approved.  *Id.* at 543 (Underwood Depo. at 159:2 to 160:8).  In September, Mr. Dale demoted Mr. Phillips from road foreman to road crew, allegedly for permitting the use of a county vehicle on private property.

On November 7, Mr. Dale made arrangements to have a county truck's kingpins and speedometer repaired at Freightliner in Wichita Falls, Texas.  He instructed his road foreman to have Mr. Phillips drive the truck to Freightliner and to have Mr. Underwood follow in another vehicle and give Mr. Phillips a ride back.  At Freightliner, Mr. Phillips asked the repairman to check the brakes and

-3-

call the county's safety director for repair authorization if work was needed. Mr. Dale claims that two days later, he received a call from Freightliner concerning additional work on the brakes and radiator requested by plaintiffs that would cost an additional two thousand dollars. Facing end-of-year budget constraints, Mr. Dale instructed the repairman to perform only limited work on the brakes necessary for safe travel back to the county, intending that, as was usually the case with brake repair, the remainder of the brake work would be performed by county employees.

In the ensuing week, Mr. Dale was standoffish, very short, and generally unfriendly toward Mr. Underwood. On November 16, he called plaintiffs into his office and terminated their employment. According to Mr. Underwood, Mr. Dale said "he was tired of [plaintiffs] going over his head," in this instance requesting Freightliner to perform work on the brakes and the radiator. *Id.* at 542 (Underwood Depo. at 136:19-22). When Mr. Underwood explained that he never spoke with the repairman, Mr. Dale became "extremely loud" and responded, "Well, I'm firing you anyway." *Id.* (Underwood Depo. at 137:8-13). When the truck was later returned to the county, Mr. Dale received the repair order. It is signed only by Mr. Phillips, and states that Freightliner was to "check" and "advise" regarding the brakes. *Id.* at 554. It says nothing about the radiator.

After their discharge, plaintiffs jointly filed this lawsuit against Mr. Dale and the Board. Mr. Underwood brought a claim of retaliatory discharge under

42 U.S.C. § 1983, theorizing that Mr. Dale fired him for his support of Mr. Phillips's campaign for Commissioner, in violation of his First Amendment right to free political association. Mr. Underwood claimed the Board also was liable because it had vested Mr. Dale with final policy-making authority with regard to personnel decisions, and he acted pursuant to that authority. Mr. Phillips alleged that Mr. Dale demoted and later fired him for announcing his candidacy for Commissioner and for publicly criticizing Mr. Dale. He asserted that this conduct violated his right to freedom of speech under the First Amendment and the Oklahoma Constitution, and he also brought a state-law claim that his discharge violated Oklahoma public policy.

Defendants each moved for summary judgment. In separate orders, the district court granted summary judgment for defendants against Mr. Underwood and denied summary judgment against Mr. Phillips. The court determined that Mr. Underwood had not established a disputed issue of fact that his political affiliation or beliefs were substantial or motivating factors in Mr. Dale's decision. The court noted the lack of temporal proximity between Mr. Underwood's involvement in Mr. Phillips's campaign and his discharge. The court observed that Mr. Underwood had experienced no adverse changes at work during that time and in fact received two pay raises after the election. The court concluded that Mr. Underwood's assertions as to Mr. Dale's motivation were supported primarily by his own personal opinion and speculation. As to Mr. Underwood's claims

against the Board, the court granted summary judgment to the Board because, under Mr. Underwood's theory that Mr. Dale acted as the Board's final policymaker, its liability depended on a determination that Mr. Dale had violated his constitutional rights.

In denying summary judgment on Mr. Phillips's claims, the district court determined that there were disputed fact issues and credibility assessments to be made regarding a causal connection between Mr. Dale's decisions to demote and terminate Mr. Phillips, and several actions by Mr. Phillips: his report that Mr. Dale had improperly treated a Department of Corrections inmate assigned to work on the District 3 road crew, and his public allegations that Mr. Dale had misused county funds and resources. The court also concluded that there was a factual dispute between Mr. Dale's professed reasons for demoting and discharging Mr. Phillips and Mr. Phillips's testimony that Mr. Dale's attitude changed toward him as a result of his campaign and his criticisms of Mr. Dale.

## II. Discussion

We review the district court's grant of summary judgment de novo. *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999). A court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).[2] In First Amendment cases, this "court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Jantzen*, 188 F.3d at 1251 (quotation omitted).

We first consider Mr. Dale's motion for summary judgment on Mr. Underwood's free-association claim. "The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Id.* (quotation omitted). Thus, to survive Mr. Dale's summary judgment motion, Mr. Underwood had to "establish a genuine dispute of fact that (1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors behind" his discharge and that "(2) [his] employment position[] did not require political allegiance." *Id.* It is uncontested that Mr. Underwood's position did not require political allegiance, so our analysis is limited to the first inquiry.

The temporal proximity between Mr. Phillips's announcement and Mr. Underwood's termination is a factor to consider. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Regardless of whether the gap between Mr. Underwood's protected activity and his discharge on

---

[2] Effective December 1, 2010, Rule 56 was amended. Among other changes, the standard for summary judgment was moved from subdivision (c) to subdivision (a), and its wording changed from "genuine issue" to "genuine dispute." However, "[t]he standard for granting summary judgment remains unchanged." Rule 56 advisory committee's note (2010 Amendments).

-7-

November 16 is measured from Mr. Phillips's announcement in May (a period of approximately six months) or from the July 25 election (a period of nearly four months), the gap is too long, standing alone, to establish a causal link. *See id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) for the principle that "a three-month period, standing alone, is insufficient to establish causation"). We therefore consider whether other evidence in the record supports a reasonable inference that retaliation was a substantial or motivating factor in Mr. Dale's decision to fire Mr. Underwood.

The evidence shows that, when Mr. Phillips announced his candidacy, Mr. Dale became "visibly upset," "very red faced," and "a little bit loud, more than normal," Aplt. App. at 98-99, and considered running for reelection. Later, Mr. Dale testified at his deposition that he was disappointed by Mr. Phillips's decision and felt that both men had turned on him. But at no time after Mr. Phillips's announcement did Mr. Underwood suffer any adverse changes in his employment until the Freightliner incident. During that time period, Mr. Underwood supported Mr. Phillips's campaign for two months with no adverse employment consequences or criticisms from Mr. Dale. He and Mr. Dale continued to have a friendly work relationship. Mr. Underwood also received two pay increases. That the raises were "step" increases all employees received, and not merit-based increases, does not undermine the fact that Mr. Underwood received them with Mr. Dale's approval. Thus, given the lapse of time between

Mr. Dale's initial reaction and the Freightliner incident, and the lack of any adverse employment consequences in the interim, a reasonable inference of retaliatory motive cannot be drawn from his initial reaction.

Mr. Dale's inquiry, in late August or early September, whether Mr. Underwood had publicly criticized Mr. Dale, does not alter this conclusion. Mr. Underwood denies making any such criticism, and in fact it was Mr. Phillips who made those criticisms. Yet Mr. Underwood maintains that Mr. Dale's inquiry shows that he was under the impression that Mr. Underwood was responsible for Mr. Phillips's actions. We disagree. The evidence Mr. Underwood relies on is his own testimony that Mr. Dale asked him whether he had said that Mr. Dale had "stolen or embezzled money and stolen gas." *Id.* at 539 (Underwood Depo. at 125:16-17). There is nothing about Mr. Dale's inquiry that supports a reasonable inference that he was under the impression that Mr. Underwood was behind Mr. Phillips's criticisms or that he fired Mr. Underwood because of his association with Mr. Phillips.

As to the facts surrounding the Freightliner incident, it is undisputed that Mr. Phillips was asked to simply deliver the truck to Freightliner. His request for a brake inspection exceeded the scope of his assigned task, and Mr. Underwood was with him when he did so. It is further undisputed that Mr. Underwood knew that brake work was typically performed by county employees. Thus, whether Mr. Dale was justified in firing Mr. Underwood without further investigating

what he learned during his telephone conversation with the Freightliner repairman—that both plaintiffs ordered the additional work—is the sort of personnel decision we will not second-guess. *See Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (explaining, in Title VII case, that the court's role is "not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments") (internal quotation marks omitted). This is so even considering that Mr. Dale had no prior problems with Mr. Underwood's job performance and in fact had publicly praised his road crew. Furthermore, Mr. Underwood has adduced no evidence that the change in Mr. Dale's formerly-friendly attitude in the wake of the Freightliner incident was linked to his political association with Mr. Phillips.

Nor are we persuaded by Mr. Underwood's argument that the district court's findings regarding factual disputes concerning Mr. Phillips's demotion and discharge apply equally to him. Mr. Phillips's claims of retaliatory and wrongful discharge were based on his right to freedom of speech. His public criticisms of Mr. Dale distinguish his claims, and the resultant analysis, from Mr. Underwood's claim of retaliatory discharge. The change in Mr. Dale's treatment of Mr. Phillips began well before the Freightliner incident, which marked the change in Mr. Dale's attitude toward Mr. Underwood. Thus, we conclude that Mr. Underwood has not presented evidence from which a reasonable juror could conclude that Mr. Dale's professed reason for firing him

"was not an honestly held belief but rather was subterfuge" for an illegitimate, retaliatory reason. *Young*, 468 F.3d at 1250.

Mr. Underwood also points out that he was the only District 3 employee politically associated with Mr. Phillips and the only District 3 employee that Mr. Dale fired (other than Mr. Phillips) between Mr. Phillips's announcement of his candidacy and the end of Mr. Dale's term as Commissioner. He then posits that, based on these facts, a reasonable juror could conclude that Mr. Dale was aware of Mr. Underwood's support for Mr. Phillips and angered by it, and that Mr. Dale had sufficient motivation for retaliation. This argument is wholly illogical without some showing that Mr. Dale considered firing another employee but did not do so because the employee had not supported Mr. Phillips.

In sum, we conclude that Mr. Underwood cannot meet his burden to establish a genuine issue of material fact that his political association with Mr. Phillips was a substantial or motivating factor in Mr. Dale's decision to fire him. Therefore, the district court properly entered summary judgment in favor of Mr. Dale. Because the Board's liability depends on Mr. Underwood's success against Mr. Dale, the district court also properly granted summary judgment to the Board. Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge

-11-