**Bruce Lee HINSON, Plaintiff,**

v.

**U.S.D. #500, Alma T. Molix, Bill Helms, and Urel Gibson, Defendants.**

**No. 00–4034–SAC.**

United States District Court, D. Kansas.

Jan. 24, 2002.

Bruce Lee Hinson, Kansas City, KS, pro se.

Alan V. Johnson, William F. Logan, Slian, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Plaintiff.

Deryl W. Wynn, Gregory P. Goheen, Juliann Johnson, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Elson L. Boisseau, Daniel G. Menzie, Klenda, Mitchell, Austerman & Zuercher, LLC, Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This employment discrimination and retaliation case comes before the court on defendants' motion for summary judgment. Plaintiff, who served as a custodian for U.S.D. # 500, alleges that defendants violated the Americans With Disabilities Act, 42 U.S.C. § 12102 *et seq* ("ADA"), and Kansas common law in his termination from employment. Defendants seek summary judgment on all of plaintiff's claims. Plaintiff concedes that summary judgment is appropriate on his state law claim. (Dk. 52, p. 32).[1]

---

1. Specifically, plaintiff states that his "state-law wrongful discharge claim is premature, and therefore this claim should be dismissed." (Dk. 52, p. 32). Plaintiff brings no other state law claim.

## SUMMARY JUDGMENT STANDARD

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Industries, Inc.,* 939 F.2d 887, 891 (10th Cir.1991)).

The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Ins. Corp.,* 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791(1987).

## FACTS

The relevant facts in this case are few and are largely undisputed. Plaintiff was employed as a custodian with U.S.D. # 500 for some time prior to and during 1998. In May of 1998, plaintiff allegedly sustained a work-related injury when he fell off a ladder. Plaintiff was off work from July 1998 to January 1999, when he returned with restrictions imposed by his physician. The restrictions prior to April 21, 1999, stated: "No lifting, pushing, or pulling greater than 10 pounds." (Dk. 53, Depo. Exh. 13, p. 1). The restrictions

after April 21, 1999, stated that plaintiff "should not lift, push, or pull more than 20 pounds, he should avoid unprotected heights, and he should not climb ladders." (Dk. 53, Depo. Exh. 13, p. 3).

Plaintiff admits that his medical restrictions prevented him from performing some of the typical duties of a custodian, including lifting the trash barrel, lifting the water to mop the floor, and moving the bleachers in the gym. In accordance with plaintiff's medical restrictions, defendant placed plaintiff on light duty custodial status where he was asked to do only the following: clean the blackboards, clean the students' desks, and clean the windows around the principal's office. Plaintiff performed those job duties from sometime in January through June 3, 1999.

The job duties which plaintiff could not perform while on light duty were done by other custodians who worked in the building. In return, plaintiff cleaned the desk tops and blackboards in the rooms for which the other custodians were responsible. This arrangement was unusual, as job duties for custodians are normally based upon the physical layout of the school rather than divided by tasks, and it is not common for work duties of custodians to be reassigned.

In April of 1999, plaintiff's physician recommended that plaintiff's restriction to light duty activities be made permanent. (Dk. 53, Depo. Exh. 13, p. 2). The school district has never had any custodians on permanent light duty. The record does not reveal when the permanent nature of plaintiff's restrictions was conveyed to defendants, but this apparently occurred sometime prior to June 3, 1999.

On June 3rd or 4th, a meeting was held about plaintiff's employment. The following persons attended: the plaintiff; defendant Alma T. Molix, the Director of Classified Personnel for the district; defendant Urel Gibson, the supervisor of custodians; and William Helms, the safety director who administers the workers' compensation program. The parties disagree about some of the discussion had at this meeting, but agree that it included the following representations by the defendants: that plaintiff was unable to perform the essential functions of a custodian; that plaintiff could not remain on light duty status permanently as a custodian; that plaintiff would no longer be permitted to work as a custodian; and that plaintiff could apply for available non-custodial positions which could be performed within the medical restrictions placed on plaintiff.

As a follow up to the meeting, defendant Molix wrote plaintiff a letter dated June 7th, which stated her recap of the substance of the meeting. This letter includes defendant Molix's recollection that plaintiff was not interested in alternative positions whose salary was not comparable to what plaintiff earned as a custodian. Dk. 47, Attachment, Depo. Exh. 6. The letter concludes:

> there is not any accommodation we could identify which would allow you to perform the essential duties of a custodian and also, your decision to decline consideration for other positions in the District, elicits that a recommendation be made to terminate your employment. The termination will be effective June 4, 1999. It will be recommended that you receive ten days of severance pay. You will be notified of the action taken by the Board.

Dk. 47, Attachment, Depo. Exh. 6.

On June 10, 1999, plaintiff's attorney spoke with defendant Molix, and said that plaintiff was willing to consider the alternative positions she had suggested during the June 3rd conference. Defendant Molix then sent plaintiff's attorney job descriptions for the four vacant positions which had been discussed. As a follow up, plain-

tiff's attorney wrote defendant Molix on June 10, 1999, stating that defendant was willing to entertain alternative employment with the district.[2] Plaintiff's attorney noted his awareness of the four alternative jobs, which were teacher aide, paraprofessional, secretarial positions, and food service positions. (Dk. 47 attachment, depo. Exh. 7.) The letter stated that plaintiff was willing to "entertain" any of the jobs, but "would prefer to have the [food service] management position since it pays the most amount of money and would seem to be the best job in light of his existing transferable job skills." (*Id.*, p. 2.) The letter additionally suggested that plaintiff continue to work as a custodian until an accommodated position could be worked out. (*Id.*)

Defendant Molix · did not recommend plaintiff's termination to the board, and did not reinstate him as a custodian. Instead, she invited plaintiff to take a pre-employment test for other positions in the district. Plaintiff did so and was notified on July 1st that he had passed. That letter stated that the "Personnel Office will contact you to make an appointment for an interview as vacancies occur." (Dk. 53, Depo. Exh. 8.)

On July 12, 1999, plaintiff's attorney wrote defendant's attorney, again stating that he was attempting to find plaintiff available positions within the district. Plaintiff's counsel suggested that plaintiff be reinstated as a custodian until a suitable position became available. The record fails to reveal any other relevant activity until October.[3]

On October 13, 1999, defendant Molix offered plaintiff a position within the district by sending him a letter, stating in part:

You are being assigned to a classroom aide position at Silver City Elementary ... You are to report on Tuesday, October 19, 1999, at 8:30 a.m. Report to the office and ask to see ... the principal. If you do not accept this position and report for duty, your employment with the District will be terminated.

(Dk. 53, Depo. Exh. 11).

Plaintiff received this letter on the 15th, but did not report on the 19th, and did not accept the position of teacher's aide. Instead, plaintiff wrote the EEOC on the 18th, and wrote defendant Molix on the 19th, enclosing a copy of his October 18th letter to the EEOC. Both plaintiff's letter to the EEOC and his letter to defendant Molix stated that he wanted to be placed in a managerial position with a minimum annual salary of $50,000 and other benefits. (Dk. 53, Exh. 3; Dk. 53, Exh. 15).

Defendant Molix learned on the 19th that plaintiff had not reported for duty. She thereafter turned the matter over to the school district's attorney, but did not recommend that plaintiff be terminated from employment. She has not looked for any vacant positions for plaintiff since October of 1999.

Plaintiff was subsequently evaluated for job tasks connected with his position at the district, apparently for purposes of his workers' compensation claim, and physicians found that plaintiff could not perform eight or nine of the eleven specified job tasks of his custodial position. Plaintiff additionally had a task loss evaluation done at Menninger's to determine his ability to perform seven tasks associated with his duties as a custodian, and four tasks associated with a prior job. That evalua-

---

**2.** Plaintiff testified, however, that he was actually not willing to consider other employment at that time, but that his attorney wanted him to do so.

**3.** On October 4, 1999, plaintiff wrote a letter of complaint to the EEOC, but the record fails to reveal that defendants had any knowledge of that fact.

tion found that plaintiff's task loss ranged from 73% to 82%.

Plaintiff has not been officially terminated from employment, but has not worked with or been paid by the district since June of 1999, and has had intervening employment elsewhere. Plaintiff is currently considered to be an "employee on inactive status." (Dk. 47, p. 10).

## ANALYSIS

### I. ADA Claim

Defendants seek summary judgment on plaintiff's claims brought pursuant to the Americans with Disabilities Act. Plaintiff alleges that he was terminated because of a disability, and that the district failed to reasonably accommodate that disability.

"The ADA prohibits employers from discriminating against individuals on the basis of disability." *Sorensen v. University of Utah Hosp.*, 194 F.3d 1084, 1086 (10th Cir.1999) (citing 42 U.S.C. § 12101).

■ In order to bring his claim under the ADA, plaintiff must first establish that he is a qualified individual with a disability. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1304 (10th Cir.), *cert denied*, 528 U.S. 811, 120 S.Ct. 45, 145 L.Ed.2d 40 (1999).

*Termination Claim*

■ In order to establish a prima facie case for wrongful discharge under the ADA, "a plaintiff must demonstrate (1) that she is a disabled person within the meaning of the ADA; (2) that she is able to perform the essential functions of the job with or without reasonable accommodation; and (3) that the employer terminated her because of her disability." *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1173 (10th Cir.1996).

Defendants concede that plaintiff was "disabled" within the meaning of that term as used in the ADA. (Dk. 56, p. 5). Defendants deny, however, that plaintiff was able to perform the essential functions of

his custodial position with or without reasonable accommodation. The chief dispute centers around which functions or duties of the custodial position were, in fact, essential.

*Essential Functions*

■ "The term 'essential functions' is defined as 'the fundamental job duties of the employment position the individual with a disability holds or desires.' " *Martin v. Kansas*, 190 F.3d 1120, 1130 (10th Cir.1999) (quoting 29 C.F.R. § 1630.2(n)(1)). "Whether a particular function is essential is a factual inquiry." *Martin*, 190 F.3d at 1130 (citing 29 C.F.R. Pt. 1630, App. § 1630.2(n)). The essential functions of a job are "functions that bear more than a marginal relationship to the job at issue." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1123 (10th Cir.1995). The inquiry focuses initially "on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential." 29 C.F.R. Pt. 1630, App. § 1630.2(n); *see Milton*, 53 F.3d at 1124.

If the employer does require performance of those functions, "the inquiry will then center around whether removing the function would fundamentally alter the position." *Id.*; *see White*, 45 F.3d at 362. "[I]n making this inquiry, 'consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.' " *Martin*, 190 F.3d at 1130 (quoting 42 U.S.C. § 12111(8)).

Regulations promulgated under the ADA address some of the relevant factors and evidence to consider, in stating:

(2) A job function may be considered essential for any of several reasons, including but not limited to the following: (i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(2) and (3).

■ Because the determination of what is an essential function often entails considering these different factors and weighing the facts, it "is often best" reserved for the jury. *Ingerson v. Healthsouth Corp.,* 139 F.3d 912, 1998 WL 88154, at *5 (10th Cir.Feb.26, 1998) (Table). This "does not mean every 'essential function' inquiry must go to the jury." *Id.* Summary judgment remains appropriate if no reasonable jury could find for the plaintiff after applying the factors on the facts of record. *Id.*

■ The record in this case does not include much of the evidence noted in the ADA regulations, including the employer's judgment as to which functions are essential, the amount of time spent on the job performing various functions, the work experience of past incumbents in the job and/or the current work experience of incumbents in similar jobs. Nor is any collective bargaining agreement alleged to apply.

The record does reflect the consequence of not requiring the incumbent to perform certain functions, namely, that other custodians had to perform those functions for him. The record also includes the job description which provides, in the court's view, the most probative evidence of the essential functions of the job. The "typical duties and responsibilities" of a custodian, according to the job description, are:

performs routine sweeping of rooms, halls, entrances and stairs;

empties and disposes of waste paper and refuse;

arranges room furniture;

dusts furniture, ledges, halls and entrances;

cleans and services rest rooms;

checks and locks all doors and windows;

periodically cleans chalkboards, chalk trays, and erasers; dusts trim, molding and shelves;

replaces lights;

cleans walls, lockers and furniture;

mops floors;

assists in spray buffing floors;

cleans windows and door glass;

exercises proper procedures in the care of equipment and supplies;

takes care of requests from teachers;

gives necessary assistance relating to school activities, programs, and community use of the building;

performs other miscellaneous duties assigned by Supervisors.

(Dk. 47 attachment, Depo. Exh. 19).

The relevant job description additionally lists the "Physical Demands and Working Conditions" as:

Routinely handles loads weighing up to 50 pounds and occasionally handles loads weighing up to 100 pounds or more. Walks and stands most of the day. Stooping and climbing as required. Works both inside and outside. Will be required to work extended hours in cold weather, as needed.

(*Id.*)

The record shows that defendant actually requires its custodial employees to perform the functions that the employer asserts are essential, including dumping the trash, moving the bleachers, and mopping the floor. These functions bear more than a marginal relationship to the job at issue, and require a custodian to routinely handle loads weighing up to 50 pounds.

Plaintiff's supervisor testified that based upon his medical restrictions, plaintiff couldn't perform custodial duties that the job description required. When asked what those duties were, Gibson replied:

From what I understood, he couldn't do just about anything. Just a little dusting or something like that. He couldn't do any lifting, run buffers, mopping, sweeping, climbing ladders, snow removal, cutting grass, cutting hedges, moving furniture.

Dk. 47, Exh. G, Gibson depo. p. 16. Gibson was asked if it would be possible for the job duties that plaintiff couldn't perform because of his work restrictions to be assigned to other custodians and for plaintiff to do other duties for them. Gibson replied, "It wouldn't be custodial work if that's the way it was, if somebody else was assigned his work." (*Id.*, p. 24.) Although Gibson was not acquainted with the legal terminology of "essential functions," his testimony reflects his opinion that the above tasks are, in fact, essential functions for custodians.

The court finds other evidence of the essential functions in the report from the Menninger Return to Work Center, where plaintiff was referred "for the purpose of participating in a vocational assessment to identify the job tasks he performed in the labor market for the 15 years prior to a May 1988 injury ..." (Dk. 47, Exh. B). After communicating with plaintiff, the director found seven essential tasks[4] in plaintiff's custodial work. They were: deep cleaning activities in the summer time, helping set up and tear down for special events, cleaning the restrooms, cleaning the floor, dumping the trash, shoveling snow in the winter time, and performing a variety of duties[5] as requested by teachers and school officials. *Id.*

Of these seven tasks, the director found that the first would require "heavy lifting," and that the second, third, fourth, and fifth would require lifting 50, 40, 40, and 50 pounds, respectively. Only two tasks would possibly not require plaintiff to continuously exceed his medical restrictions: the snow shoveling, which would occasionally require shoveling snow weighing about 20 pounds, and performing various duties requested by teachers. (*Id.*, "Work Background" section).

"[O]nce the employer provides evidence that an element of a job is essential, the

---

4. See Dk. 47, Exh. B., "Essential Task Performing Analysis," listing "essential job tasks."

5. Although the report lists certain duties as examples, it does not list any of the duties performed by plaintiff while on light duty, which duties plaintiff now claims are essential.

plaintiff must provide sufficient evidence to rebut that conclusion." *Ingerson v. Healthsouth Corp.*, 139 F.3d 912, 1998 WL 88154, at *4 (10th Cir.Feb.26, 1998) (Table) (affirmed district court's finding that lifting was an essential function of a registered nurse) (citing *Milton*, 53 F.3d at 1118).

The plaintiff attempts to meet this burden by his own testimony. During plaintiff's deposition, the following colloquy occurred:

Q. Do you agree that you could not perform the essential functions of your job?

A. Not all of them.

Q. What I am focusing on, you know what essential functions are. How would you define that?

A. I'm going to take essential functions to mean I could perform some of the jobs, so yes I could perform some of the jobs, essential functions of the job of a custodian.

Q. What would you consider to be the essential functions of the job as a custodian? In other words not all the functions, essential functions?

A. Cleaning of the rooms, emptying of the trash, sweeping of the rooms is the essential functions of the job.

Q. Would you consider the essential functions of the job as custodian to be the same functions that you performed from January of 1999 through June 3rd of 1999.

A. Pretty much.

(Dk. 47 Exh. A, p. 118–19).

Plaintiff's testimony, although far from clear, appears to mean that plaintiff believes he can do some of the essential functions of the position. At best, according to plaintiff, cleaning the rooms, emptying the trash, and sweeping the rooms are the essential functions of the job. Yet plaintiff also stated that the same functions that he performed while on light duty, *i.e.,* cleaning the blackboards and desks and some windows, were "pretty much" the essential functions of the job. Plaintiff does not contend that he could in fact perform the multiple custodial tasks which required lifting over 20 pounds.

■ "In many situations, an employer may create a position, the nature of which requires an employee to perform a multitude of tasks in a wide range of environments." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1176 (10th Cir.1999). This is such a case. "It is not the province of the court to undermine" or question the defendant's legitimate operation of its schools. *See Anderson*, 181 F.3d at 1176 (citation omitted). Indeed, "[i]t is [the] employer's province to define the job and the functions required to perform it." *Id.* at 1177 (citation omitted). Defendant has done so in its job description.

The work restrictions permanently imposed upon the plaintiff preclude him from performing the physical tasks regularly done by a custodian in this school district. Thus the court concludes that the plaintiff's evidence is overwhelmingly insufficient for a jury to find that the essential functions of a custodian do not include performing the physical activities stated in the job description as typical duties or physical demands of that job. The court thus finds that plaintiff could not perform the essential functions of the custodial position without reasonable accommodation.

*Accommodation Claim*

■ Where, as here, a job's essential functions cannot be performed without accommodation, an employer must provide those accommodations that are reasonable. Accommodations are reasonable unless they "would impose an undue hardship on the operation of the business" by "requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). "Because the plaintiff bears the ultimate burden of prov-

ing he is a 'qualified individual' under the ADA, *see White*, 45 F.3d at 361, he must produce sufficient evidence to make a prima facie showing that accommodation is possible, and then the burden shifts to the ... [defendant employer] 'to present evidence of its inability to accommodate.'" *Johnson v. City of Midwest City*, 166 F.3d 1221, 1999 WL 11312 (10th Cir.Jan.13, 1999) (Table).

Two accommodations are proposed by the plaintiff: permitting him to remain on permanent light duty as a custodian, and reassigning him to the position of food service manager.

*Permanent Light Duty*

██ Plaintiff alleges that permitting him to continue working permanently as a custodian on light duty is reasonable because he worked as a custodian on light duty for approximately six months, because he performed the essential duties of his position during that time, and because the other custodians did not have to work harder while he was on light duty.

Plaintiff does not come forth with any evidence showing that his assignment to the light-duty custodial position was permanent or that defendant had permanently assigned any other employee to a light duty custodial position. Instead, it is undisputed that defendant had never assigned any custodian to permanent light duty status, and that plaintiff remained on light duty much longer than other custodians had. The mere fact that defendant permitted plaintiff to perform light duty tasks pending a determination of permanency from plaintiff's physician does not raise an inference that the defendant could permit the plaintiff to do so permanently.

Under these circumstances, an employer's refusal to provide permanent light duty assignments for a disabled employee is not a violation of the ADA. *See Mathews v. The Denver Post*, 263 F.3d 1164 (10th Cir.2001) (request to do only some of the

essential duties is tantamount to requesting permanent light duty position); *Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1485–86 (D.Kan.1995) (permanent assignment to light duty position not a reasonable accommodation under ADA where employer treated such positions as temporary); *Martin v. State of Kansas*, 996 F.Supp. 1282 (D.Kan.1998) (same).

██ Plaintiff's allegation that he performed the essential functions of his position while on light duty has been found unsupported by the record, as noted in the section above. An employer is not required under the ADA to accommodate an employee's disability by eliminating or modifying an essential function of his job. *See Martin*, 190 F.3d at 1133; *Smith v. Blue Cross Blue Shield of Kansas, Inc.*, 102 F.3d 1075, 1076 (10th Cir.1996), *cert. denied*, 522 U.S. 811, 118 S.Ct. 54, 139 L.Ed.2d 18 (1997).

The "[d]efendant is under no obligation to change the structure of its business or create a new position for Plaintiff." *Anderson*, 181 F.3d at 1177. For that matter, an accommodation that would result in other employees having to work harder is not required. *Milton*, 53 F.3d at 1124 (citing 29 C.F.R. § 1630.2(p)(2)(v)).

Plaintiff's assertion that the other custodians did not have to work harder while plaintiff was on light duty is supported only by citation to the following fact: that plaintiff's immediate supervisor never told his supervisor of any problems in assigning work duties around the plaintiff's medical restrictions, or that any of the other custodians had complaints about the work assignments. That one supervisor never complained to another falls far short of proving the underlying fact that other custodians did not have to work harder while plaintiff was on light duty. Given Gibson's undisputed testimony cited above, and the fact that other custodians had to do all

their own work involving heavy lifting as well as plaintiff's, this assertion lacks merit.

*Reassignment to Food Service Manager*

Plaintiff additionally contends that defendants should have accommodated him by assigning him to the position of food service manager. Plaintiff contends that this accommodation was reasonable because he requested this position, he testified that he was qualified for it, he completed and passed the pre-employment math test which apparently related to this position, and defendant failed to respond to his request.

■■■■ "If no reasonable accommodation can keep the employee in his or her existing job, then the reasonable accommodation may require reassignment to a vacant position so long as the employee is qualified for the job and it does not impose an undue burden on the employer." *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1169 (10th Cir.1999). Although "reassignment of an employee to a vacant position in a company is one of the range of reasonable accommodations which must be considered [by an employer] and, if appropriate, offered if the employee is unable to perform his or her existing job," *Smith,* 180 F.3d at 1166, "employers need not create a new job or even modify an essential function of a vacant job in order to make it suitable for the disabled employee ..." *Id.* at 1170. The statute ensures the employer that it need not make the reassignment unless the employee is truly qualified to do the job.

■■■■ It is plaintiff's burden to establish that he was "qualified" for the position he sought. *Dutton v. Johnson Bd. of*

*County Com'rs,* 859 F.Supp. 498, 504 (D.Kan.1994). Plaintiff testified that he had never worked in food service, and had no training or education in food service. (Dk. 47, Exh. A., Hinson depo. p. 139–140.) Plaintiff admitted that he could not perform the tasks required of food service personnel because of his physical restrictions. Nonetheless, plaintiff thought that he may qualify to manage food service people because the defendant could give him training in that area, and it "wasn't that hard." (*Id.*) This testimony is insufficient to show that plaintiff was in fact qualified to be the food service manager.

Plaintiff additionally points to defendant Molix's testimony that plaintiff met the "minimum qualifications" for the teacher aide, para-professional, secretarial, and food service positions. (Dk. 53, Molix depo. p. 79.) Molix testified, however, that those four positions paid less than the custodian's position, making it unreasonable to infer that defendant Molix's testimony included the food service manager position. The facts of record fail to raise a material question regarding plaintiff's qualifications for the position of food service manager.[6]

Plaintiff apparently had some sort of managerial experience at his previous employment, but the record shows that such experience was many years ago, and fails to show if or how such experience would assist plaintiff in qualifying to be a food service manager for a school or school district. Plaintiff additionally stated that he considered himself qualified for the food service manager position. "However, an employee's "own opinions about his ... qualifications [do not] give rise to a materi-

---

6. The court further notes that "the only positions that need to be considered for a reassignment are those that are not promotions." *Smith,* 180 F.3d at 1176. The record shows that plaintiff was making about $32,000 a year as a custodian, (Dk. 47, Exh. A, Hinson depo., p. 55.), but desired a managerial position which paid approximately $50,000 (Dk. 53, Exh. 3).

al factual dispute." *Rabinovitz v. Pena,* 89 F.3d 482, 487 (7th Cir.1996)." *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F.3d 1321 (10th Cir.1999). The court thus finds no material question of fact, and that plaintiff is not a "qualified individual" within the meaning of the ADA. Plaintiff could not perform the essential functions of the custodial position he held with or without reasonable accommodation, and has not raised a material question of fact regarding his qualifications to be a food service manager. The court therefore grants the defendants' motion for summary judgment as to the plaintiff's ADA disability discrimination claims.

## ADA RETALIATION CLAIM

Plaintiff's ADA retaliation claim, as fashioned in its response to the summary judgment motions, is that defendants retaliated against him by "failing to reasonably investigate possible reassignment to a vacant position" for him once defendants learned that he was pursuing a complaint before the EEOC. (Dk. 52, p. 31).

 The ADA makes it "unlawful to coerce, intimate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To establish a prima facie case of retaliation under the ADA, the plaintiff must show: "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and employer's adverse action." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1324 (10th Cir.1997).

The parties do not dispute that plaintiff's informal complaint to the EEOC constitutes protected employee action.[7] Nor does defendant challenge plaintiff's assertion that failure to reasonably investigate alternative available positions may constitute "adverse action," in light of the Tenth Circuit's broad construction of that phrase. *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996). Defendant alleges solely that there was no causal connection between plaintiff's complaint to the EEOC and defendant's adverse action.

It is undisputed that plaintiff sent defendant Molix a letter dated October 19th, which enclosed a copy of plaintiff's October 18th letter to the EEOC. According to the record, this was defendant's first knowledge of any protected conduct by the plaintiff. Plaintiff alleges that the jury could find that defendant Molix stopped looking for possible reassignment for plaintiff once she found out that he was pursuing a complaint with the EEOC. Plaintiff bases this contention solely upon defendant Molix's testimony that she had not looked for any vacant positions for which plaintiff might be qualified "since October of 1999." (Dk. 53, Molix depo. p. 165), and upon the temporal proximity of the events.

 It is true that the requisite causal connection may be shown by producing "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir.1982). Here, however, plaintiff has not attempted to show that defendant Molix had any knowledge of plaintiff's

---

7. The court does not make any finding on this issue, but notes that the generic nature of plaintiff's October 18th letter to the EEOC (Dk. 53, Depo. Exh. 15) appears to fail the requirement that complaints must be of acts protected by Title VII to constitute protected conduct. Nonetheless, for purposes of simplicity, the court will refer to plaintiff's letter to the EEOC as "protected conduct."

protected conduct prior to the date on which she decided to discontinue seeking other positions for him and to turn the matter over to the district's attorney, as is plaintiff's burden.

■ Even assuming [8] that defendant Molix received plaintiff's letter dated the 19th a few days thereafter, the record fails to show whether her decision to discontinue seeking positions for plaintiff was made before or after she received that letter and learned of plaintiff's protected conduct.

■ Evidence of the acting party's knowledge is essential to establishing a causal connection between the adverse action and the protected activity. *See Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993). Absent a showing of such knowledge, no inference of causation is possible.[9] Plaintiff has not presented a genuine issue of material fact as to whether a causal connection exists between his protected activity and defendants' adverse activity after plaintiff's EEOC complaint.

■ Furthermore, even if plaintiff had established a prima facie case, defendants have offered a legitimate nondiscriminatory reason for its actions, which plaintiff has not shown may be pretextual. Defendant Molix testified that she decided to turn the matter over to the attorney because she had looked for a position for plaintiff for over four months, she could not continue to hold plaintiff in limbo, she had never looked for a position for another employee longer than she looked for one for plaintiff, and that she "turned it over to [the] attorney after [she] assigned [plaintiff] to a job which he did not report to take." (Dk. 53, Molix depo., p. 166. *See*

*also id* pp. 157–166.) Plaintiff has not refuted any of these facts, or raised a material question of fact regarding this issue. Defendant's motion for summary judgment on the plaintiff's retaliation claim is thus appropriate.

■ The court further notes that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition. *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999). Accordingly, the individual defendants named in this action may by no means be held liable for discrimination or retaliation in violation of the ADA.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Dk. 47) is granted, and that defendants' motion for leave to amend their motion for summary judgment (Dk. 57) is denied as moot.

---

**8.** When mail is properly addressed, stamped and deposited in the mail system there is a rebuttable presumption that it was received by the party to whom it was sent. *Federal Kemper Life Assur. Co. v. Ellis*, 28 F.3d 1033, 1041, and n. 8 (10th Cir.1994).

**9.** The court does not reach defendants' contention that the consistency of defendants' actions both before and after the filing vitiates any inference supported by the actions' temporal proximity to the protected conduct. *See Hemsing v. Philips Semiconductors*, 185 F.3d 874, 1999 WL 476017 (10th Cir.1999) (Table).