**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JUL 1 2004**

**TENTH CIRCUIT**

CORDELL ANDREW BELCHER,

      Plaintiff - Appellant,

v.

BOEING COMMERCIAL AIRPLANE
GROUP,

      Defendant - Appellee.

No. 03-3319
(D.C. No. 00-CV-1445-KMH)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HENRY**, and **TYMKOVICH**, Circuit Judges.[**]

Plaintiff-Appellant Cordell Andrew Belcher, appearing pro se, appeals from

the district court's grant of summary judgment to Defendant-Appellee Boeing

Commercial Airplane Group on Mr. Belcher's claims of race and disability

discrimination and retaliation. Our jurisdiction arises under 28 U.S.C. § 1291 and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

we affirm.

Background

The following facts are uncontroverted, or where controverted are viewed in the light most favorable to Mr. Belcher. Cordell Belcher is an African-American male, who has both vocational training and work experience as a draftsman. In early 1996, Mr. Belcher was hired by Boeing Aircraft Group to work in that capacity on a company project to update the process of designing and listing aircraft parts.[1] R. Doc. 44 at 3. Throughout the course of his initial assignment with Boeing, Mr. Belcher participated in after-hours classes designed to teach employees to use CATIA (Computer Aided Three-Dimensional Interactive Application), a computer-aided drafting tool. He completed the course, but still considered himself a novice on CATIA after his training. Id. at 4.

In early March 1997, Mr. Belcher was transferred to another working group within Boeing, where his immediate supervisor was Alan Robichaux. Although the source of the difficulty is unclear, it is uncontroverted that the professional relationship between Mr. Belcher and Mr. Robichaux was strained. Mr. Belcher claims that Mr. Robichaux was biased against him because of his race, while Mr.

---

[1]Mr. Belcher describes himself as a "job shopper." Although he was actually hired by Wyatt & Associates and assigned to work at Boeing, Boeing concedes his status as an employee for purposes of his Title VII and ADA claims.

Robichaux expressed concern with Mr. Belcher's level of proficiency with the CATIA program. In any event, both believed that Mr. Belcher would function better in a different working environment. Id. at 4-5.

On March 17, upon Mr. Belcher's return to work after a brief illness, Mr. Robichaux approached him and discussed with him the prospect of a transfer to a working group that relied less heavily on CATIA. In response, Mr. Belcher requested a meeting with Mr. Robichaux, Julie Acosta (the second-level manager of the group), and Lynn Galliart, the group personnel representative. The four met on March 18, 1997. Id. at 4.

Following the meeting, Ms. Acosta agreed to transfer Mr. Belcher to a different supervisor. Mr. Belcher then took a scheduled vacation and returned to work on March 31, 1997. Upon returning to work, Mr. Belcher was transferred from Mr. Robichaux's group, to a group headed by Larry Hebert. Because Mr. Hebert was absent from the office that day, Mr. Belcher was introduced to Darrel Bishop, the lead engineer for the group. Mr. Bishop gave Mr. Belcher a drafting assignment that Mr. Hebert had left for him, and informed Mr. Belcher that he would have to take a CATIA evaluation in order to determine his level of proficiency with the program. To that end, Mr. Bishop directed Mr. Belcher to Randy Hilliard, the Boeing employee in charge of administering the CATIA test. Upon meeting with Mr. Hilliard and discussing the basics of the test, Mr. Belcher

informed Mr. Hilliard that he was not feeling well and asked if he could take the test at a later time. Mr. Hilliard agreed. Mr. Belcher also told Mr. Hilliard that the test looked like a "Southern voting rights test" (apparently because it would be evaluated subjectively) and that he felt this sort of evaluation constituted harassment. Mr. Belcher then returned to his work area and, after a brief conversation with Mr. Bishop, left work without providing a reason or a return date. R. Doc. 63 at 6-7. Mr. Belcher did not begin work on the assignment Mr. Hebert had left for him.

Mr. Bishop later recounted these events to Mr. Hebert who decided to terminate Mr. Belcher's employment with Boeing. Mr. Hebert had never met Mr. Belcher at the time he decided to terminate him. Id. at 8. Following his termination, Mr. Belcher filed a complaint with the Kansas Human Rights Commission (KHRC) alleging that Boeing discriminated against him on the basis of race and age. R. Doc. 49 ex. 5. On December 17, 1998, the KHRC issued a finding of no probable cause. The Equal Opportunity Employment Commission (EEOC) then reviewed the KHRC's findings and issued a right to sue letter on February 26, 1999. Mr. Belcher filed the current suit on October 31, 2000.

Mr. Belcher's theory is that Mr. Robichaux set him up to fail by scrutinizing his attendance and work, forcing him to be slow and deliberate with every project undertaken. According to Mr. Belcher, the real reason for his

termination was his statement to Lynn Galliart that Mr. Belcher was going to file a formal complaint against Mr. Robichaux. R. Doc. 55, Belcher Depo. at 272-74. He contends that Mr. Robichaux branded him as incompetent, which led Mr. Hebert to insist upon a CATIA evaluation. Id. at 261-62.

The district court then held Mr. Belcher's retaliation and disability discrimination claims had not been raised administratively and were therefore unexhausted and barred. R. Doc. 63 at 10-11. It then ruled that Mr. Belcher could not establish a prima facie case of racial discrimination given uncontroverted evidence that the decision-maker in this case, Mr. Hebert, was unaware that Mr. Belcher was African-American. In the alternative, the court held that Boeing set forth legitimate non-discriminatory reasons for his termination, specifically, Mr. Hebert's (1) refusal to take the CATIA test, (2) start the assignment, and (3) indicate when he would return. The district court then concluded that Mr. Belcher had not made a showing that these reasons were pretextual.

On appeal, Mr. Belcher argues that he can show eighteen specific facts. The facts which he seeks to establish, however, must be material–facts that do not bear on Mr. Hebert's decision to terminate him simply are not material and will not preclude summary judgment. See Jones v. Barnhart, 349 F.3d 1260, 1269 (10th Cir. 2003) (employee outspokenness of which decisionmaker was not aware

cannot support causation requirement in a retaliation claim); <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 531 (10th Cir. 1994) (comments by non-decisionmakers are not material in showing the employer's action is discriminatory). He also argues that the district court erred in relying upon affidavits because they are hearsay. Finally, he contends that the district court overlooked evidence in the record that would have rebutted Boeing's defense.

## Discussion

We review a district court's grant of summary judgment de novo, applying the same standard used by the district court. <u>See</u> <u>Pacheco v. Whiting Farms, Inc.</u>, 365 F.3d 1199, 1201 (10th Cir. 2004). An important function of summary judgment is to eliminate factually unsupported claims. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). A nonmovant may not rest upon his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Once the movant has identified an element of a claim that the nonmovant cannot prove, all other factual disputes concerning the claim become immaterial and summary judgment is properly entered. <u>See</u> <u>Celotex</u>, 477 U.S. at 322-23. The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to him, but that material must contain significantly probative evidence that would allow a trier of fact to find in

his favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

A.  Title VII Race Discrimination

Mr. Belcher claims he was terminated by Boeing because he is African-American.  Because Mr. Belcher lacks direct evidence, his claim is analyzed under the burden shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1283 (10th Cir. 2003); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225-26 (10th Cir. 2000).  Under the McDonnell Douglas test the plaintiff has the initial burden of making a prima facie showing of racial discrimination.  In the context of a contested termination, the prima facie showing can be made by demonstrating that (1) plaintiff belonged to a protected class; (2) that he was qualified for the job; (3) that despite his qualifications he was discharged; and (4) that the job was not eliminated after his discharge.  Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999).  Implicit in this formulation is that the person responsible for the termination must be aware that the plaintiff belonged to a protected class.  Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).  If the plaintiff succeeds in establishing a prima facie case of racial discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination decision.  Once the employer does so, the burden returns to the plaintiff to demonstrate that the

- 7 -

employer's proffered reason is in fact a pretext for racial discrimination. McDonnell Douglas, 411 U.S. at 804.

In granting summary judgment to Boeing on Mr. Belcher's racial discrimination claim, the district court found that the uncontroverted facts establish that Mr. Hebert, the individual making the termination decision, did not know that Mr. Belcher was African-American. R. Doc. 63 at 12.

We agree with the district court that in the absence of any evidence tending to demonstrate that Mr. Hebert knew Mr. Belcher was African-American, Mr. Belcher cannot make out a prima facie claim of racial discrimination. See Lubetsky v. Applied Card Sys. Inc., 296 F.3d 1301, 1305-06 (11th Cir. 2002), cert. denied, 537 U.S. 1106 (2003); Geraci, 82 F.3d at 580; Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987). In the retaliation context, we have held consistently that an employee cannot establish causation as part of the prima facie case where the employer is unaware of the protected activity. Jones, 349 F.3d at 1269, Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993). Similarly, the inference of discrimination does not make sense when the decisionmaker is unaware of the employer's membership in a protected class.

It is uncontroverted that Mr. Belcher and Mr. Hebert had not met at the time of the termination. R. Doc. 55, Belcher Depo. at 147-48, 276. In moving for summary judgment, Boeing relied upon Mr. Hebert's affidavit stating that Mr.

Hebert was unaware that Mr. Belcher was African-American. R. Docs. 48 at 10, ¶ 44; 49 Hebert Aff. at 1-2, ¶ 9. In response, Mr. Belcher stated:

> Controverted. Mr. Hebert may have never met plaintiff, but he knew he was African American. Mr. Hebert's actions were totally irresponsible and based upon total hearsay. Racism can easily be inferred to explain such action. [Belcher depo.]

R. Doc. 55 at 6-7, ¶ 44. We have reviewed Mr. Belcher's deposition and find nothing that would provide support for Mr. Belcher's statement that Mr. Hebert knew that Mr. Belcher was African-American. Indeed, Mr. Belcher's theory (unsupported by anything but his own speculation) is that rather than reveal the racially motivated nature of the problems between himself and Mr. Belcher, Mr. Robichaux passed along false concerns about Mr. Belcher's competency to Mr. Hebert which led to the CATIA test. R. Doc. 55, Belcher Depo. at 267.[2] In these circumstances, summary judgment is entirely proper as Mr. Belcher would have the burden of proof at trial as to Mr. Hebert's awareness of Mr. Belcher's race given the evidence to the contrary. Celotex, 477 U.S. at 322. Because we resolve the case based upon the lack of a prima facie case, it is unnecessary to consider the remainder of the McDonnell Douglas formulation.

Mr. Belcher's claim that the district court improperly considered affidavits

---

[2] In affidavits, both Mr. Hebert and Mr. Robichaux indicate that Mr. Robichaux had no role in deciding whether Mr. Belcher's CATIA skills should be evaluated or whether Mr. Belcher should be terminated. R. Doc. 49, Hebert Aff. at 1-2, ¶¶ 3, 4, 10, Robichaux Aff. at 3, ¶¶ 9-10.

submitted by Boeing in support of its motion for summary judgment is meritless. Rule 56(c) and (e) specifically provide for affidavits. Neither party is required to provide evidence in a form that would be admissible at trial in seeking summary judgment. Celotex, 477 U.S. at 324.

B.   Americans with Disabilities Act and Retaliation Claims

The district court granted Boeing's motion for summary judgment on Mr. Belcher's claims of discrimination based on disability, and retaliatory termination, on the basis that Mr. Belcher had failed to exhaust his administrative remedies. Tenth Circuit law concerning the exhaustion of administrative remedies holds that "a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). The ADA expressly adopts Title VII's administrative exhaustion requirements. See 42 U.S.C. § 12117(a).

Mr. Belcher filed his initial administrative complaint with the KHRC and the charges were later reviewed by the EEOC. On the KHRC form, Mr. Belcher marked the box for racial discrimination, and left the box for retaliation and disability discrimination blank. R. Doc. 63 at 9. A party's failure to mark a box for a particular type of discrimination creates a presumption that the complainant is not asserting claims under those theories. Gunnell v. Utah Valley State Coll.,

152 F.3d 1253, 1260 (10th Cir. 1998). In the narrative portion of the complaint, Mr. Belcher wrote nothing to suggest retaliation or disability discrimination. The district court correctly held that Mr. Belcher had presented no competent evidence to support his claim that he had exhausted his administrative remedies with respect to retaliation and disability discrimination.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge