**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MICHAEL SAVILLE,

      Plaintiff-Appellant,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

      Defendant-Appellee.

No. 05-4058
(D.C. No. 2:00-CV-681-DB)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

Plaintiff-Appellant Michael Saville appeals from a summary judgment in his case for retaliatory constructive discharge in violation of the Fair Labor Standards Act (FLSA). We affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

BACKGROUND

Saville worked for International Business Machines Corporation (IBM) as a senior customer engineer. He was "primarily responsible for the post sale maintenance of IBM equipment in customer accounts," which required that he provide "technical assistance and advice to less experienced personnel" and "develop[ ] positive relationships with customer management and staff." Aplt. App. at 275. "Saville was not a perfect employee," however, as he had problems mentoring and communicating with his peers. Aplt. Br. at 8.

In 1997, Vickie Fullmer became Saville's supervisor. Toward the end of the year, Saville began voicing his concerns that IBM's "crackdown on overtime was leading his peers to work overtime without recording it and without being paid for it," creating a morale problem. *Id.* at 11; *see also* Aplt. App. at 75A. In July 1998, Fullmer met with Saville for an interim performance evaluation after some of Saville's peers complained that he was difficult to work with and a customer complained of disparaging treatment. Aplt. App. at 142-43, 205. During the meeting, Fullmer revealed some of the complaints and accused Saville of having a "bad attitude." *Id.* at 88-89. Afterward, Saville submitted a "Speak Up" e-mail to IBM's human resources department, accusing Fullmer of "dropping my performance" rating because Saville's group had criticized her leadership in a survey. Aplee. Supp. App. at 192; *see also* Aplt. Br. at 13. In the e-mail, Saville

admitted, "I think I do have an attitude problem as a result of some of my manager's action and lack of action . . . ." Aplee. Supp. App. at 192.

In September 1998, Saville met with Fullmer's supervisor, Brian Myers, and told him that some customer engineers were "grumbling about working overtime and not recording it and getting paid for it because of how it's being micro-managed." Aplt. App. at 106. Saville further complained that Fullmer's leadership negatively affected morale. Following an investigation, Myers told Saville that "his attitude, leadership, mentoring and support for Ms. Fullmer were unacceptable and that his attitude problem was causing customer complaints." *Id.* at 149. Saville was given the option of being placed on a performance improvement plan or retiring from IBM with a severance package.

During an October 5, 1998 meeting, Fullmer told Saville that the improvement plan would be thirty days long, *id.* at 121, that it would gage performance, leadership, peer support, management support, teamwork and customer satisfaction, *id.* at 123, and that if she received one complaint he would fail the plan and be fired, *id.* at 121. Saville was given thirty days to decide which option to choose. *Id.* at 123. On October 30, 1998, Saville notified IBM that he chose retirement, effective the next day.

In August 2000, Saville sued IBM under the FLSA, alleging that he was constructively discharged for "voic[ing] his concerns regarding IBM's practices in recording and paying overtime." *Id.* at 13. The district court granted IBM

-3-

summary judgment, ruling, among other things, that Saville suffered no adverse employment action.  Saville appeals.

## DISCUSSION

### I.  Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is not "genuine," and summary judgment will be warranted, if no reasonable jury viewing the evidence could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  We review "a grant of summary judgment de novo with an examination of the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."  *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).

### II.  The FLSA

Among other things, the FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint . . . under or related to [the FLSA]."  29 U.S.C. § 215(a)(3).  This "section protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal," and "applies to the

unofficial assertion of rights through complaints at work." *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984).

We analyze FLSA-retaliation claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). Under that framework, the employee must first establish a prima facie case of retaliation. *Id.* If the employee succeeds, the employer must offer a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Then, "the burden shifts back to the employee to show [that] genuine issues of material fact exist regarding whether the employer's proffered reason is unworthy of credence." *Id.* at 1207. We conclude that Saville's retaliation case fails at the framework's initial stage.

An employee cannot establish a prima facie case of retaliation without an adverse employment action. *See id.* at 1206. Saville's retirement from IBM would qualify as an adverse action only if IBM deliberately made or allowed Saville's working conditions to become so intolerable that he had no other choice but to retire. *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005). In other words, Saville's retirement would have to amount to a constructive discharge, and would depend upon whether a reasonable person would view the conditions at IBM as intolerable, not upon Saville's subjective view of those conditions. *Id.*

Saville argues that a triable issue of fact exists as to whether a reasonable person would have chosen retirement over the performance improvement plan, because (1) he had received a negative interim evaluation; (2) his complaints against Fullmer were not seriously considered, and instead, he was accused of being the problem; (3) Myers told him, during their September 1998 meeting, "I want you out" of IBM, Aplt. App. at 118 (quotation omitted);[1] and (4) Myers said the duration of the improvement plan would be ninety days, but Fullmer shortened it to thirty days, "did not put anything on paper," and said one complaint would result in termination, Aplt. Br. at 39.[2] We agree with the district court that no reasonable jury could find these conditions so intolerable as to render Saville's retirement involuntary. The inquiry is not whether the conditions at IBM were "difficult or unpleasant," but whether, at the time of Saville's retirement, IBM did not allow him "the opportunity to make a free choice

---

[1] Saville ignores the full extent of Myers' remarks. At his deposition, Saville testified that Myers said, "'I want you to leave IBM. Well, you can accept the [performance improvement plan].'" Aplt. App. at 118. In any event, an employer's subjective intentions regarding the employee have no bearing on whether there was a constructive discharge. *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

[2] Saville also states that Fullmer and Myers "transformed [a] customer's failure [to perform its obligations] into a customer complaint against Mr. Saville." Aplt. Br. at 38. But Saville fails to cite any part of the record showing such a transformation. Indeed, the customer submitted an affidavit testifying that it had asked IBM to remove Saville from a project because he "was obnoxious and acted inappropriately" and "was not treating us properly and with respect." Aplt. App. at 205.

regarding his employment relationship." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (quotation omitted). Other courts have held "that criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions." *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002); *accord Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir. 2005). We agree. *Cf. Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1339 (10th Cir. 2000) (placing employee on a professional development plan and requiring employee to meet weekly with her superior was not an adverse employment action in her First Amendment retaliation case). Furthermore, we have previously indicated that an employer's offer of an alternative to quitting is not consistent with constructive discharge. *See, e.g., Exum*, 389 F.3d at 1136. Saville could have remained at IBM and undertaken the performance improvement plan. Indeed, Saville testified at deposition that he had placed at least six subordinates on ninety-day improvement plans and they all succeeded, although some "fell off" afterward. Aplt. App. at 127.[3] Finally, Saville was given thirty days in which to consider

_____

[3] We are not persuaded by Saville's summary contention that a thirty-day plan is somehow more onerous than a ninety-day plan. Nor do we attribute any weight to Saville's assertion that, if he had chosen the improvement plan, he would have remained subject to termination "a year or more after the successful completion of the plan" if he violated any of the plan's criteria, Aplt. Br. at 35. Mere speculation is insufficient to withstand summary judgment. *Setliff v. Mem'l Hosp. of Sheridan County*, 850 F.2d 1384, 1393 (10th Cir. 1988); *see also Agnew*,

(continued...)

remaining with IBM and was verbally notified of the criteria under which he would be judged if he elected to remain. The totality of the circumstances indicates, as a matter of law, that Saville's retirement was voluntary.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[3](...continued)
286 F.3d at 310 ("An employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged. Instead, the employee is obliged not to assume the worst, and not to jump to conclusions too fast." (quotation omitted)).